Jacob Heilweil and Beatrice Heilweil v. Commissioner.
Heilweil v. Commissioner
Docket No. 50808.
United States Tax Court
T.C. Memo 1956-13; 1956 Tax Ct. Memo LEXIS 285; 15 T.C.M. (CCH) 60; T.C.M. (RIA) 56013; January 19, 1956
Aaron M. Diamond, Esq., for the petitioners. Robert J. Cowan, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined a deficiency in Federal income tax against petitioner Jacob Heilweil for the year 1947 in the amount of $3,496.04 and against petitioners for the year 1948 in the amount of $3,629.60. The only issues presented by the petition are whether respondent erred in disallowing a bad debt deduction of $8,120 taken by petitioner Jacob in his return for 1947 and in disallowing a bad debt deduction taken by petitioners in their return for 1948 in the amount of $10,750. These bad debt deductions *286 are predicated on the claim that advances made by Jacob to a corporation, of which his stepson was an officer, director, and controlling stockholder, and his wife, the petitioner Beatrice, was an officer and director, constitute a debt, the loss from the worthlessness of which was incurred in Jacob's trade or business, which debt became partially worthless in 1947 and completely worthless in 1948. [1] Respondent contends that the debt became worthless in 1948 but was a nonbusiness debt and, therefore, the amount of the deduction is limited by the provisions of section 23(k)(4) of the Internal Revenue Code of 1939. Findings of Fact A stipulation of facts was filed by the parties covering a part of the operative facts. We find these facts to be as stipulated. In April 1946 Jacob, who was then a widower, married Beatrice Fine, a widow with one adult son named Edwin E. Fine. During the taxable years Jacob and Beatrice lived in Laurelton, New York. Jacob filed a separate income tax return for the year 1947, and Jacob and *287 Beatrice filed a joint return for the year 1948. These returns were filed with the collector of internal revenue for the second district of New York. Jacob is and was during the taxable years a certified public accountant. Since 1924 he has practiced accounting in Connecticut and New York. In order to acquire clients and create professional good will in connection with his practice as an accountant, Jacob made loans to clients and prospective clients during the years 1924 to 1948, inclusive. He made 53 such loans (many of them to the same clients) in individual amounts ranging from $125 to $2,450. Only six were for amounts in excess of $1,000. Almost 100 per cent of these loans was repaid to him. At about the same time in 1946, when Jacob married Beatrice Fine, her son Edwin was discharged from the Armed Services. Edwin had had prior experience in the leather goods manufacturing business, and particularly in the manufacture of handbags. In 1945, while still on terminal leave from the Armed Services, Edwin formed a corporation known as Stratford Handbags with two other men. This corporation borrowed money from Jacob who was its accountant and repaid the loan which was not in excess *288 of $3,500. In 1947 Edwin sold his interest in Stratford Handbags. Thereupon, on January 27, 1947, he organized another corporation, LaJule Handbags, Inc., for the purpose of manufacturing and selling handbags. Another man, named Eugene Perle, undertook to participate with Edwin in the formation of this corporation but failed to invest any money in the stock, and was only connected with it a very short time. After Perle withdrew from the undertaking, Beatrice began to work at the office of LaJule Handbags, Inc., and became an officer and director. Edwin was the principal stockholder. In January 1948 this corporation was dissolved and another corporation, LaJule Handbags Corp., was organized to take over the assets and business of LaJule Handbags, Inc. Of the capital stock of LaJule Handbags Corp., approximately 26 per cent was owned by Beatrice and 74 per cent by Edwin. Beatrice was an officer and director of this corporation also. Edwin was president of both corporations. In February 1947, less than a month after the incorporation of LaJule Handbags, Inc., Jacob advanced $6,000 to the corporation. Thereafter, through October of that year, Jacob advanced other sums of money to that *289 corporation so that the total amount of the sums thus advanced by him was $18,870 by the end of October. These advances were evidenced by non-interest bearing notes signed by Edwin on behalf of the corporation and all due on December 29, 1947. No payments were ever made on these notes. By the end of that year that corporation, in addition to the advances of Jacob, had notes payable outstanding to Beatrice in the sum of $11,009.80 and to Edwin in the sum of $1,215.95. At that time LaJule Handbags, Inc., had trade accounts payable of $1,128.40, accrued taxes and expenses of $2,440.13, and a mortgage debt of $3,500. Jacob served as accountant and financial advisor to LaJule Handbags, Inc. He received nothing on account of these services, although it was understood that he was to be paid $100 a month. By the end of 1947 LaJule Handbags, Inc., was in a critical financial condition. Jacob, Beatrice, and Edwin conferred as to the course to be taken. Edwin felt that because the production problems of the business seemed to have been mastered and there were large unfilled orders on hand, the business could be carried on profitably. At the conference it was decided that a new corporation, *290 LaJule Handbags Corp., should be formed to succeed to the business and assets of LaJule Handbags, Inc., that Jacob, Beatrice, and Edwin would subordinate their notes receivable to trade creditors, and would, in some way not disclosed by the record, waive the payment of part of their notes receivable, and that Jacob would guarantee the payment of trade creditors. Thereupon, LaJule Handbags, Inc., was dissolved and LaJule Handbags Corp. succeeded to its assets and business. La Jule Handbags Corp. ceased operation in 1948. Trade creditors were paid in full. Beatrice was paid $2,000 on her loans. Jacob received nothing on account of his advances. The debt of Jacob on account of these advances became totally worthless in 1948. This debt was a nonbusiness debt. Opinion KERN, Judge: The statutory provisions pertinent to a consideration of this case are subsections (1) and (4) of section 23 (k) of the Internal Revenue Code of 1939, set out in the margin. [2] The crucial question is whether the advances of Jacob to the corporation, controlled by his stepson and wife, constitutes a debt, the loss from the worthlessness of which was incurred in Jacob's trade or business. *291 Assuming arguendo that the loans made by Jacob during the years 1924 to 1948 to clients and prospective clients for the purpose of acquiring clients and creating professional good will created business debts as distinguished from nonbusiness debts, see Stuart Bart, 21 T.C. 880, we have concluded from the record before us that the advances made by Jacob to LaJule Handbags, Inc., do not fall within the pattern of these loans and do not constitute "a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business." All of the circumstances, including Jacob's relationship to Beatrice and Edwin, and the extraordinarily large amounts involved in the advances made to a new and unproved business organization, indicate that Jacob was not making the advances in question for the purpose of acquiring a client for his accounting practice or creating professional good will, but that he was promoting and financing a corporation for the benefit of close members of his family. There is no suggestion that Jacob's employment as an accountant by LaJule Handbags, Inc., (an employment, as it turned out, entirely without profit to Jacob) was in any way dependent *292 on the making of any loans to the corporation and there is no testimony that Jacob made the advances for the purpose of obtaining a client in connection with his profession as an accountant. The business of making loans by an accountant to clients and prospective clients for the purpose of obtaining and retaining profitable professional business differs from the business of financing and promoting family corporations. See Giblin v. Commissioner, 227 Fed. (2d) 692, (C.A. 5, 11-23-55). Since we have held that the advances in question constituted a nonbusiness debt, a deduction on account of its worthlessness should be taken in the year in which the debt becomes completely worthless subject to the limitations of section 23(k)(4), Internal Revenue Code of 1939. This is conceded by respondent to have been in 1948. While respondent on brief states that the deduction of the debt as a nonbusiness bad debt was allowed in 1948 under section 23 (k)(4), this is not apparent from the deficiency notice for that year. Accordingly, Decision will be entered under Rule 50. Footnotes
1. Petitioner contends in the alternative upon brief that the entire amount of the advances should be deductible as a wholly worthless business debt in 1948.↩
2. Section 23 (Internal Revenue Code of 1939) * * *
(k) Bad Debts. - (1) General Rule. - Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. This paragraph shall not apply in the case of a taxpayer, other than a bank, as defined in section 104, with respect to a debt evidenced by a security as defined in paragraph (3) of this subsection. This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection. * * *
(4) Non-Business Debts. - In the case of a taxpayer other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term"non-business debt" means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. * * *↩